IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LINCOLN NATIONAL LIFE**
**INSURANCE COMPANY**,

       Plaintiff,

v.

                             **No. 08mc0015 BB**

**A. DAVID SILVER, a/k/a DAVID**
**SILVER; ADS PARTNERS, LTC; DOE**
**COMPANIES, 1-10,**

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

       **THIS MATTER** comes before the Court *sua sponte* on a letter that pro se Defendant A. David Silver has written to the Clerk of the Court, asking the Clerk to explain several issues, some of which require legal analysis. I have attached that letter as Exhibit A. The Court asked the Clerk's office to conduct more inquiry regarding Silver's case files and has decided to address the issues that Silver has raised in the letter and to finally put to rest the problem with destroyed and misplaced files.

       As noted in a previous opinion,

> A Judgment for $24,173, 864.98, plus interest in favor of Lincoln National and against David Silver, ADS Partners, Ltd. and Doe Companies 2-10 was entered on April 9, 1996 in the United States District Court for the Northern District of Illinois, Eastern Division. *See* Doc. 2, Ex. 1. Lincoln National registered the Judgment in the United States District Court for the District of New Mexico on October 24,1997, and the Clerk issued a "Judgment Docket" verifying that a copy of the April 9, 1996 Judgment was now part of the Court's records. *See id.* Ex. 2. Lincoln National filed the verification in the Santa Fe and Rio Arriba County real-property records. *See id.*

Doc. 203 at 2. At that time, the Clerk's office had a policy of destroying records that were more than five years old, and the Court's copy of the 1997 Judgment Docket with the supporting records

apparently was destroyed in 2003. When Lincoln National moved to revive the Illinois Judgment in 2004, however, counsel again attached to his motion a certified copy of that 1996 Illinois Judgment, together with a copy of the October 24, 1997 Judgment Docket that, by this time, counsel had recorded in Santa Fe County. *See* Doc. 2 at 1-8.

> Silver objected [to reviving the 1996 judgment]; and this Court granted that motion on October 21, 2004. *See* [Doc. 2,] Ex. 3; *see* Doc. 65, Ex. B (Silver's Response to the motion to revive, arguing that the federal Illinois judgment had not been properly domesticated in the NM state courts). Silver admits that he "learns the judgment was revived on October 21, 2004, and requests copy of the Court's Order by facsimile on October 26, 2004," Doc. 63 at 6, but that he "did not receive a reply," *id.* at 5; that he moved for reconsideration of that Order on November 5, 2004, *id.* at 6; but that, because he did not have a copy of the judgment granting the motion to revive, he "could not appeal" the decision to the Tenth Circuit Court of Appeals, *id.* at 5. Silver "determined to wait" until Lincoln National started trying to collect on his assets and to object to their efforts "at that time." *Id.*

Doc. 203 at 2-3 (footnote omitted). After file-stamping all of these documents - the 2004 motion to revive; the 1996 Illinois Judgment; the copy of the October 24, 1997 Judgment Docket; an executed return of service showing service of these three documents on Silver on September 17, 2004; Silver's motion for additional time to respond to the motion to revive the judgment; Silver's response to that motion; Lincoln National's response in opposition to a motion, which Silver apparently never filed; Silver's reply to that response; the October 21, 2004 Order Reviving Judgment; Silver's motion for reconsideration; and Silver's Supplement to the motion for reconsideration – the clerk's-office employees placed them in a file labeled "Lincoln National Life v. David Silver 97mc3" and kept them in a locked filing cabinet in the clerk's office that held the Court's miscellaneous files.

> In 2007, Lincoln National obtained a second "Judgment Docket" verification again noting the existence of the $24,173.864 judgment that had previously been registered in this District, but the document unfortunately contains a typographical error stating that the date of the original judgment was "4/10/07" instead of "4/10/96." *See* Doc. 65, Ex. 1.

2

Doc. 203 at 3. A copy of this document was the last document placed in the hard-copy 97mc3 folder. Contrary to Silver's assertions, the 2007 Judgment Docket is not "missing a consecutive file number." It was chronologically filed into the existing hard-copy file of 97mc3, to which it was related. None of the documents in that file were given consecutive numbers. Lincoln National subsequently recorded the 2007 Judgment Docket in the real-property records of Rio Arriba and Bernalillo Counties.

Silver asks why the November 14, 2007 Judgment Docket was "signed more than three years after the date necessary to renew the judgment for a subsequent seven years." The reason it was signed on November 14, 2007 is because that is the date that Lincoln National requested an updated Judgment Docket, and the documents in the file indicated that Lincoln National was entitled to it. There is no requirement of which the Court is aware that a request for a Judgment Docket be made at any specific time after the underlying judgment has been revived.

Silver asks why the November 14, 2007 Judgment Docket has "April 10, 2007 as the date of the original judgment when that date was clearly October 24, 2004, when Robert March signed it." Silver is wrong on two counts. Robert March did not sign the November 14, 2007 Judgment Docket; deputy clerk Vineeta Verma signed it on behalf of Matt Dykman. And the original judgment date was not October 24, 2004. As noted above, I have already ruled that the April 10, 2007 date for the original judgment was a typographical error. *See* Doc. 203 at 3.

Before 2007, all miscellaneous files – files that contain matters that are not initiated by civil or criminal complaints – were placed, in numerical order, in a locked file cabinet and there was no electronic record or docket summary sheet for those cases. After January 1, 2007, the District of New Mexico changed to exclusive electronic filing, and at that point, any time a **new** miscellaneous case file is opened by a party, the documents are scanned or filed as PDF files into the electronic

3

record by that party (unless the person appears pro se, in which case the clerk's office electronically scans and files the documents) and a docket summary sheet is automatically created. Because the November 14, 2007 Judgment Docket related to the existing 97mc3 file, a new miscellaneous case file was not opened at that time.

But when Mr. Arland, who represents Lincoln National, decided in 2008 to seek writs of garnishment based on the November 14, 2007 Judgment Docket and the October 21, 2004 Order renewing the 1996 Illinois judgment, which were located in the 97mc3 hard-copy file, he was required to electronically file those applications because of the new requirement for electronic filing in every type of case. No *electronic record* existed for 97mc3. Mr. Arland filed *his* copies of some of the documents from 97mc3 into a new miscellaneous file as Document 2 on April 18, 2008– apparently for reference. That miscellaneous case file was assigned the number 08mc15 by the automated CM/ECF system. He subsequently electronically filed his applications for writs of garnishment into that electronic record. Thus, Document 2 in 08mc15 initially consisted only of Mr. Arland's copies of some of the 97mc3 documents.

After noticing that more documents were contained in the 97mc3 file, I asked the clerk's office to supplement Document 2 in 08mc15 with some more of the documents so that there would be an electronic record of all of the types of documents that have been filed in this matter. *See* 11cv256 Doc. 70 at 8-9. That explains why all of the copies of documents from 97mc3 that Ms. Richmann sent to Silver on September 8, 2010 in response to his request for copies also have the 4/18/08 date in the electronic file-stamp line at the top of the pages of those documents. Document 2 of 08mc15 was again supplemented when I realized that a source of Silver's continuing confusion may be that the Court's copies of two of the 97mc3 documents - the November 14, 2007 Judgment Docket and the October 21, 2004 Order reviving the 1996 judgment – were not in the 08mc15

4

electronic record and should be scanned and included in that record, instead of just having Mr. Arland's copies of those documents (which are also file-stamped from different counties where they were subsequently recorded in the various county real-property records)[1]. Thus, Silver's statement that the November 14, 2007 Judgment Docket "was signed and dated" *after* Mr. Arland opened 08mc15 is simply erroneous. As noted above, the county-file-stamped copies were filed in 08mc15 on April 18, 2008, but the original documents without those county-file stamps have either been in the 97mc3 file, in a locked file drawer in the clerk's office or in my chambers, since the date they were originally filed. They are now also in the electronic record of 08mc15 in Doc. 2.

Silver asks why he was not notified "by the Court" of the new case number in 08mc15, since he was named as a "Defendant" in that case. As noted above, Mr. Arland filed his copies of some of the 97mc3 files as background in 08mc15, and then filed his applications for writs, which are directed to third parties. No "complaint" was ever filed that would make this a "civil case," and Silver did not become an active party in 08mc15 until he improperly filed motions on behalf of his corporations and submitted his mailing information to the Court. *See* Docs. 62, 63. After that point, the clerk's office has mailed to him a copy of all electronic filings. The Clerk had no duty to notify Silver regarding the new case number created by Mr. Arland's April 18, 2008 filings.

As noted in my prior orders, I held a hearing on August 13, 2008 on several motions, and requested that the 97mc3 file be sent to my chambers some time before then. *See* 11cv256 Doc. 65 at 3. At the hearing, I invited Silver to look at the file and make copies of whatever he desired. He did not do so. After the file was returned to the Clerk's office in Albuquerque, no one knows exactly when it was put in the wrong location, but Silver's presumption that it has been missing

---

[1] Ms. Richmann copied all 32 pages of Document 2 in this case and sent them to Silver after he again requested copies of documents on July 27, 2011.

since October 21, 2004 is erroneous.  It clearly was not missing when Ms. Verma placed the

November 14, 2007 Judgment Docket into it, or when I took it to the August 13, 2008 hearing and

it was again located on June 4, 2010.

It is clear from Silver's letter asking why "there does not seem to be a Civil Docket in Misc.

Cause 97-3" with the same format as a civil docket summary sheet that, despite my explanation

regarding what a "Judgment Docket" is, *see* 11cv256, Doc. 70 at 2 n.2, he is now trying to confuse

a "Judgment Docket" with a "civil docket" summary sheet, which simply summarizes and reflects

in a chronological list the filings in any given case.  Simply put, "Judgment Dockets" do not have

the same "format" as a "docket sheet" because they are two different things.  The "civil docket" for

97mc3 is the hard-copy file itself and a summary docket sheet has never been created for it.

Silver challenges a statement made by Ms. Richmann, a clerk's office employee, about the

October 24, 1997 Judgment Docket, in a letter she wrote to him in September 2010.  As Ms.

Richmann already informed Silver on April 28, 2011, she does not recall the details of what she sent

to Silver almost a year ago, but the document speaks for itself.  Ms. Richmann simply misread the

smudged "1997 Oct. 28" date stamp from Bernalillo County  as "2007" and misstated that it was

recorded twice in San Juan County instead of in Rio Arriba and Bernalillo Counties.  *See* Doc. 2 at

11.

Regarding Silver's questions about the differences in the formats of 2007 and 2011 Judgment

Dockets, again, the documents speak for themselves.  Clearly, the form changed between 2007 and

2011.

Regarding Silver's question "(k)", the quoted language is correct except, as noted above, that

automated records were not kept for miscellaneous files before 2007.  As Silver has been told time

and again, a chronological docket – the hard-copy file – has been kept from 2004 for 97mc3 and an electronic, chronological record has been kept from its inception for 08mc15.

As to Silver's question "(m)," the Clerk did not "notify the public that [his] assets were to be seized" under the writs of garnishment.  Silver has had ample opportunity to challenge, and has challenged, the process of issuing writs of garnishment.

As I have noted in prior opinions, the validity of the writs of garnishment depend upon three things: the validity of the original 1996 Illinois Judgment - which has never been challenged; the validity of my October 21, 2004 Order reviving that judgment, and the validity of the November 14, 2007 Judgment Docket – irrespective of where files containing those documents were located at any given time.  Silver never appealed from the 1996 Judgment or the 2004 Order and I have already ruled that the challenged November 14, 2007 Judgment Docket is valid.

_Bruce D Black_____

**CHIEF UNITED STATES DISTRICT JUDGE**